UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PAUL DONAGHER,

                            Plaintiff,

          - against -

AIRWAYS MOVING & STORAGE, INC.
d/b/a AIRWAY MOVING SYSTEMS, et al.,

                            Defendant.
------------------------------------------------------------x

05 Cv. 6616 (CLB)

*Memorandum and Order*

<u>Brieant, J</u>.

       This is a diversity case alleging negligence under New York law. Before this Court is a Motion by Defendants Airway Moving and Storage Inc. ("Airway"), Jesse Swinson, and United Van Lines, LLC's ("United") for summary judgment (Doc. No.17), filed on May 22, 2006. Opposition papers were filed on June 15, 2006, and reply papers were filed on June 21, 2006. Also before the Court is Defendant Mohd Kahn's motion for summary judgment (Doc. No. 18), filed on May 25, 2006. Opposition papers were filed on June 21, 2006 and reply papers were filed on June 21, 2006. Oral argument was heard by the Court on June 23, 2006, and the motion was fully submitted for decision.

       Plaintiff Paul Donagher seeks to recover for personal injuries to his head and back allegedly sustained as a result of a motor vehicle accident which occurred on September 1, 2004, on Interstate I-95 in New Rochelle, New York. Plaintiff Dona gher was traveling from his home in Cos Cob, Connecticut to John F. Kennedy International Airport in New York and was riding as a passenger in the rear passenger seat of a 1998 Lincoln, owned and operated by Defendant

1

Modh Kahn. They were driving southbound on Interstate I-95 when Defendant Kahn's vehicle collided with a tractor-trailer, also traveling southbound.

The tractor-trailer was driven by Defendant Jesse Swinson, who was employed by Defendant Airway; the tractor-trailer was leased to Airway from United. Both Kahn and Swinson admit to being involved in the motor vehicle accident, but each denies liability. Each driver maintains the he never left his lane of travel, but admit that the vehicles collided, resulting in impact to the left rear of the Lincoln, which spun from the right-most lane leftward, finally stopping at the left guardrail. Both vehicles were damaged. Plaintiff was treated for initial complaints about the right side of his head and neck pain in the emergency room at Sound Shore Medical Center of Westchester ("Soundshore") on September 1, 2004.[1]

At Soundshore, Joshua Herbert, MD was covering for Plaintiff's primary care physician, Jack DiTeodoro, MD, and performed the initial medical evaluation. Dr. Herbert noted spiral tenderness at the left and lower right thoratic lumbar region and diagnosed the Plaintiff with cervical lumbago. In addition to instruction to rest and to alternate ice and moist heat, Dr. Herbert instructed Plaintiff to do no lifting and to limit his exercise to range of motion exercises. Dr. Herbert noted that he would consider recommending physical therapy and an MRI if there were no improvements. Dr DiTeodoro continued to treat the Plaintiff and performed objective tests to determine the Plaintiff's range of motion, and myofascial problem, and referred the

---

[1] It is unclear at what time the accident occurred, and when Plaintiff was treated. Plaintiff's memo states that the accident occurred at 4:20 p.m., *see* p. 1; Defendants Airway, et al., state that Plaintiff was seen in the E.R. at 5:08 a.m. on September 1, 2004.

Plaintiff for physical therapy, which he received from October 1, 2004 through October 29, 2004 from the Advanced Physical Therapy Center. The therapists performed objective tests and determined the Plaintiff's range off motion in the thoratic right side was only 70-75 degrees and 65 degrees on the left side. At times they did not perform tests because of Plaintiff's reported level of pain. Dr. DiTeodoro then recommended pain management because physical therapy did not provided the proper relief. Dr. DiTeodoro referred the Plaintiff to Dr. Vincent Carlesi, MD, because he was unable to provide further treatment due to the nature of the injuries.

Dr. Carlesi has been treating the Plaintiff for chronic pain management over the past year. He recently concluded that Plaintiff has a 5% permanent impairment of the lumbar spine and a 3% disability rating for chronic pain under the American Medical Association Guides to the Evaluation of Patient Impairment. Dr. Carlesi's report dated July 4, 2005 reflects that the injuries that were sustained to the lower back are mechanical in nature. Dr. Carlesi also asserts that patients can experience chronic pain even though the MRI findings are minimal. The Plaintiff has received a series of steroid injections for his injuries and is expected to continue with such treatment at an estimated cost of $20,000.00 per year.

Dr. Carlesi also referred the Plaintiff to Peter L. Bertacchi, MD, who performed a needle EMG examination on May 9, 2006, which revealed evidence of lumbar radiculopathy at the L5 and S1 root level on the right and at L4, L5, and S1 root level on the left. Dr. Bertacchi calculated that the Plaintiff has a 13% whole person impairment under the American Medical Association Guides to the Evaluation of Permanent Impairment.

Defendants' independent medical examiner, Michael Weintraub, MD, a neurologist, concluded that the accident caused lumbar strain with radiculitis, but that Plaintiff did not display any neurological disability. Plaintiff was also examined by Defendants' independent medical examiner, Dr. Martin Barschi, who concluded the Plaintiff's range of motion was full-- slow, but full. He also concluded that Plaintiff sustained multiple soft tissue injuries to his neck and back as a result of the accident on September 1, 2004, are not substantiated by objective orthopedic findings or MRI testing.

Plaintiff testified that since the accident, he cannot play golf, and has trouble lifting things, bending down, and sitting or standing for long periods of time. Prior to the accident, Plaintiff testified that he would go to the golf driving range three times per week in the winter, and would play twice a week during the spring and summer months. Plaintiff also testified that when he goes grocery shopping, he has difficulty lifting the bags, and also has difficulty bending over to pick things up. Plaintiff seeks money damages in excess of the jurisdictional requirements, costs, a jury trial, and any and all further relief that the Court deems fair and equitable. Defendants seek summary judgment, stating that there are no issues of material fact and the Plaintiff has not sustained a "serious injury" as defined by Section 5102(d) of the New York Insurance Law. For the following reasons, both motions for summary judgment are denied.

*Summary Judgment Standard:*

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If "reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 106 S. Ct. 1505, 2513 (1986). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson* at 255 (1986). If, as to the issue "on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d. Cir. 1994).

*Did Plaintiff Sustain A "Serious Injury" As Defined By Section 5102(d) of the New York Insurance Law?:*

Under New York's No-Fault Law, there is a qualified prohibition against seeking recovery for non-economic loss for personal injuries related to a motor vehicle accident. *See* NY INS. Law 5104(a). Section 5104(a) provides that there is no right of recovery for non-economic loss for personal injuries arising out of negligence in the use or operation of a motor vehicle, except in the case of a "serious injury" or for basic economic loss. Section 5102(d) enumerates nine categories of "serious injury" that qualify for recovery; only two are applicable here: 1) permanent consequential limitation of use of a body organ or member; or 2) significant limitation of use of a body function or system.

5

Here, Plaintiff has sufficiently pled injury that a jury might find to be a "serious injury" within the meaning of the statute. Dr. Carlesi believes that Plaintiff has a permanent partial disability of 5% of the lumbar spine; the EMG revealed evidence off chronic lumbar radiculopathy at the L5 and S1 root level on the right and at the L4, L5 and S1 root level on the left; Dr. Carlesi has determined that the disability is chronic and causes some significant impairment of his functionality, also rating him with a 3% disability; Dr. Bertacchi determined that Plaintiff has 13% total whole person impairment, which includes the lumbar spine and organ system, under the American Medical Association Guides to the Evaluation of Permanent Impairment, amongst other opinions mentioned in the Facts Section, *supra*. These medical opinions are sufficient for Plaintiff's claim to survive a motion for summary judgment on the "serious injury" prong of the statue; whether the jury will agree with these doctors' characterization of Plaintiff's condition remains to be seen, and this Court expresses no opinion on that issue. *See Lopez v. Senatore, et al.*, 65 N.Y. 2d. 1017 (1985) (where the treating physician identified a limitation of movement of the neck [of Plaintiff] by only 10 degrees to the right or left, and on that predicate expressed the opinion that there was significant limitation of use of a described body function or system; such evidence was sufficient for the denial of summary judgment to defendants).

*Has Plaintiff Sufficiently Alleged That His Injury Prevented Him From Performing "Substantially All" of His Daily Activities for At Least 90 Out of the First 180 Days Following the Injury, as Required by Section 5102(d)?:*

6

Under the statute, to survive summary judgment, Plaintiff must prove, in addition to proving serious injury, that the medically determined injury or impairment of a non-permanent nature prevented him from performing substantially all of the material acts which constitute his usual and customary daily activities for not less than ninety days during the 180 eighty days immediately following the occurrence of the injury or impairment. *See* New York Insurance Law Section 5102(d). The New York Court of Appeals has held that this requires a showing that the plaintiff's daily activities have been restricted to a great extent during the enumerated period. *See Gaddy v. Eyler*, 79 N.Y.2d. 955 (1992). While Plaintiff did return to work approximately two weeks after the accident, a jury may find that his alleged inability to (1) perform essential functions (such as lifting grocery packages, etc.) and (2) partake in his long-enjoyed routine of recreational activities (such as golf), practically indefinitely, was a result of this accident. The Court, of course, has no opinion on this issue.

The motions for summary judgment are denied. Counsel shall attend before the Court on October 2, 2006 at 9:30 a.m. for jury selection to be followed by trial.

X

                X

                        X

SO ORDERED.

Dated: White Plains, New York
       July 10, 2006

_Charles L. Brieant_
Charles L. Brieant, U.S.D.J.